RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE __4_/_30_/_13___
         _OOB_

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| BRANDON LEE LANDS,<br>            Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:10-CV-00343 |
| VERSUS | |
| SGT. LEMOINE, et al.,<br>            Defendants | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Brandon Lee Lands ("Lands")on February 22, 2010, and amended on June 16, 2010 (Doc. 10).  The named defendants are Sgt. Lemoine, Warden Lynn Cooper, Lt. Wilson, Sgt. Batiste, and James M. Leblanc, all correctional officers employed at the Avoyelles Correctional Center ("ACC") in Cottonport, Lousiana.

Lands alleges that, on April 7, 2009, inmate William Hebert reported to Sgt. Lemoine that his personal belongings had been taken from his locker, and that he suspected Lands, as well as other inmates, of having taken his things (Docs. 1, 10).  On April 8, 2009, Lands was attacked by inmate William Hebert with a weapon (combination locks on a leather belt) (Doc. 1).  Sgt. Baptiste was away at the time; when he returned, he observed the incident and intervened.  As a result, Lands required 24 staples on his head, 38 stitches in his facet, and was left with permanently impaired

vision and scars (Doc. 1). Lands also alleges he was falsely charged for the incident and sentenced to four months in the working cell block (Doc. 1).

Lands contends Sgt. Lemoine failed to take reasonable steps to protect inmate safety after Hebert reported he suspected specific inmates of having taken his property (Doc. 10). Lands also contends Sgt. Batiste left his post unguarded, resulting in Hebert having an opportunity to attack and severely injure Lands (Doc. 10). For relief, Lands asks for monetary damages (Doc. 1). Lands is presently confined in the Dixon Correctional Institute in Jackson, Louisiana.

Lands voluntarily dismissed his action against James Leblanc, Lynn Cooper, Lt. Col. Dupas, and Lt. Wilson (Docs. 11, 13). Lemoine and Batiste answered the complaint (Doc. 27). Lands filed a motion for summary judgment (Doc. 87), and Lemoine and Baptiste filed cross-motions for summary judgment (Doc. 101, 105).

The parties' motions for summary judgment are now before the court for disposition.

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as
> to any material fact and the movant is entitled to
> judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct

3

the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial.    In this analysis, we review the facts and draw all inferences most favorable to the nonmovant.  Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989).   However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment.  Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

Sgt. Lemoine

Sgt. Lemoine filed a motion for summary judgment (Doc. 101) on the basis that Lands previously filed a motion to amend the complaint to substitute Sgt. Gregory Normand for Sgt. Lemoine (Doc. 30), alleging he had named the wrong defendant.  Lands' motion to amend was denied (Docs. 31, 69).  Lands also contends in his motion for summary judgment (Doc. 87) and shows through an affidavit by William Hebert (Doc. 87, Ex.), that inmate William Hebert had informed Sgt. Normand, not Sgt. Lemoine, that his property had been taken from his locker.

Since Lands has judicially admitted that he named Sgt. Lemoine as a defendant in error, Lands' motion for summary judgment should be denied as to Lemoine (Doc. 87), Lemoine's motion for summary judgment should be granted, and Lands' action against Lemoine should be dismissed.

4

<u>Sgt. Baptiste</u>

Sgt. Glenn Batiste filed a motion for summary judgment (Doc. 105), contending he did not abandon his post and was present when William Hebert began to attack Lands.

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. <u>Farmer</u>, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. <u>Farmer</u>, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of

5

the risk.   The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.  Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety.  Farmer, 114 S.Ct. at 1981-82.   Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008).   However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.  Farmer, 114 S.Ct. at 1982-83.

Lands submitted an affidavit by inmate William Hebert to show that, when Hebert realized there was no deputy at the station in front of the dorm early on April 8, 2009, he (Hebert) attacked Lands when he was asleep (Doc. 87, Ex.).  Hebert further stated in his affidavit that he was able to beat Lands with his weapon for about two minutes before Sgt. Batiste returned and ordered Hebert to stop (Doc. 87, Ex.).

Batiste states in his affidavit, and his deposition by written

questions (Doc. 105-Exs.), that he was not notified that William Hebert had complained of his property being stolen. Batiste states in his affidavit, and the unusual occurrent report shows, that Batiste was observing the Cajun 2 tier at the time William Hebert began beating Lands, Batiste gave Hebert a verbal order to cease, and followed up with the applicable protocols to intervene to stop the attack with the assistance of other officers (Docs. 87-Ex., 105-Ex.). Batiste further states in his deposition (by written question) that he conducted his counts between 1 and 1:15 a.m., and at 2:15 and 3:15, and he made rounds between count times (Doc. 105, Ex.). The unusual occurrence report indicates the incident occurred at 2:59 a.m. (Doc. 87, Ex.).

Lands contends, essentially, that Batiste was derelict in his duties because he not sitting at the station, watching the tier when Hebert attacked him. However, Batiste had other job duties, such as counts and rounds, which required him to get up and walk away periodically, although he would still be observing the tier. Therefore, regardless of whether Batiste was sitting at the station and watching the tier at the time of the attack, or was making rounds or conducting a count, Lands has not alleged facts that show Batiste was derelict in his duties and deliberately indifferent to Lands' safety.

Lands also contends that Batiste should have known Hebert may attack him because Hebert had complained to Sgt. Normand about

Lands. However, Lands has not shown that Batiste actually knew Hebert had complained about stolen property the day before. Sgt. Batiste states in his affidavit that he did not know Hebert's property had been stolen, and Sgt. Normand denied that Hebert made such a complaint to him.

Since there are no genuine issues of material fact which would preclude a summary judgment in favor of Batiste, Lands' motion for summary judgment against Batiste should be denied, Batiste's motion for summary judgment should be granted, and Lands' action against Batiste should be dismissed.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Lands' motion for summary judgment (Doc. 87) be DENIED.

IT IS FURTHER RECOMMENDED that Lemoine's motion for summary judgment (Doc. 101) be GRANTED and that Lands' action against Lemoine be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Batiste's motion for summary judgment (Doc. 105) be GRANTED and that Lands' action against Batiste be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served

with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of April 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE